UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED

JUL 0 9 2003



CLERK, U.S. DISTRICT COURT
ESTERN DISTRICT OF T.

| | | |
|---|---|---|
| HOLLY REYNA SHIELDS ROBINSON, Special Administrator for the Estate of Harold Lloyd Shields, Deceased[1], Plaintiff, | § § § § § § | |
| v. | § § | No. SA-01-CA-0289-RF |
| CAROL L. TWISS, KERR COUNTY, and DONNIE J. COLEMAN, Defendants. | § § § § | |

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

BEFORE THE COURT are the three motions for summary judgment of Defendants Kerr County, Carol L. Twiss, and Donnie J. Coleman; Plaintiff's consolidated response; and Defendants' replies. Having carefully considered the parties' briefings, the competent summary judgment evidence, and the applicable law, the Court GRANTS the motions.

**I.     Background**

The instant controversy arises out of the investigation, indictment, and prosecution of Harold Lloyd Shields ("Shields") on three counts of sexual assault. Shields retired to Kerr County with his wife in fall of 1998. After his arrival, Shields made the acquaintance of Ben Fife ("Fife") at a local restaurant. Thereafter, Shields and Fife occasionally dined together.

---

[1] Harold Shields was the original plaintiff in this lawsuit. He passed away in June of 2002; at that time, his daughter, Holly Rena Shields Robinson, moved for and obtained an Order Granting Substitution in place of her father.

On November 15, 1999, Defendant Carol L. Twiss ("Twiss"), deputy and investigator for the Kerr County Sheriff's Department, received word that a seven-year-old child had been severely sexually assaulted over a number of years by Fife (her grandfather), and her uncle. The child later revealed in an interview with an investigator for Child Protective Services that two non-family members (one an older man known as "Mr. M") had also sexually abused her.

Fife's eventual arrest occurred outside of the restaurant. Shields, who was dining there that evening, emerged to inquire about the arrest. Shields' association with Fife caused law enforcement to suspect him as the possible Mr. M.

Although there were significant discrepancies between the description of Mr. M furnished by the child and Shields, Twiss, in a second interview with the child, devised a photographic lineup including a picture of Shields. The lineup consisted of fifteen individuals, twelve of them young and obviously not Mr. M.[2] Of the remaining three, the child indicated that Shields' photo resembled Mr. M. Following the identification, Twiss requested an interview with Shields, who voluntarily complied. At the interview, Shields vehemently denied any involvement in the sexual assaults.

On March 23, 2000, Defendant Donnie Jeanne Coleman ("Coleman"), the assistant district attorney in charge of prosecuting the child's case, decided to submit the case against Mr. M to the grand jury, and called Twiss to testify. The grand jury ultimately indicted

---

[2] The twelve photographs of younger men were meant to track down the other non-family perpetrator identified by the child.

Shields on three counts of sexual assault.

The following day, Shields surrendered himself to the police. On March 27, 2000, Shields was released from custody after paying a ten-thousand-dollar bond fee. Pursuant to the conditions of his release on bond, Shields lived under the restrictions imposed on sex offenders.

The trial of Fife began on December 11, 2000. The same evening, Coleman met with the child to prepare her to testify at trial. At that meeting, the child confirmed the allegations against Fife but denied the existence of Mr. M altogether. The next day, Coleman requested the court to drop the criminal charges pending against Shields. The court dismissed the charges on December 28, 2000.

Shields filed this lawsuit on April 6, 2001[3], alleging the following constitutional violations actionable pursuant to 28 U.S.C. § 1983:

(1) Unreasonable arrest, unreasonable detention, and malicious prosecution by Defendants Kerr County, Twiss, and Coleman;

(2) Unreasonable investigation by Defendants Twiss and Coleman;

(3) Failure by Defendant Kerr County to supervise Twiss and to provide her with a manageable case load, resulting in an inadequate investigation and subsequent violation of Shields' civil rights;

(4) Failure by Defendant Kerr County to supervise Twiss and train her in the creation and

---

[3] Plaintiff filed a first amended complaint on June 15, 2001, and a second amended complaint on September 18, 2001. The Court will refer to the latest complaint.

presentation of photographic lineups.

Shields also alleges that Defendants Twiss and Coleman falsely arrested, falsely imprisoned, and maliciously prosecuted him in violation of state law. Each Defendant has filed a separate motion for summary judgment seeking to dismiss the claims.

I.  Discussion

   A.  Legal Standards

      1.  Summary Judgment

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law.[4] A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in his favor."[5] The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim.[6] The burden then shifts to the nonmoving party, who must, by

---

[4] *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

[5] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

[6] *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178.

submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[7] The nonmovant may not rest upon the pleadings, but must identify specific facts establishing that a genuine issue exists for trial.[8] The Court, in turn, "must draw all reasonable inferences in favor of the nonmoving party, and . . . may not make credibility determinations or weigh the evidence."[9]

### 2. Qualified Immunity

Qualified immunity shields government officials from civil liability for damages based upon the performance of discretionary functions if the acts were objectively reasonable in light of then clearly established law.[10] Once a § 1983 defendant pleads qualified immunity and shows that he is a governmental official whose position involves the exercise of discretion, the plaintiff bears the burden of rebutting this defense by establishing that the official's wrongful conduct violated clearly established law.[11] "Clearly established" means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[12] A defendant's acts are objectively

---

[7] *See Celotex*, 477 U.S. at 324.

[8] *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1996).

[9] *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 150 (2000) (citations omitted).

[10] *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir.2001); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

[11] *Thompson*, 245 F.3d at 456-57, 460 (quoting *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir.1997)).

[12] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

reasonable unless *all* reasonable officials in those circumstances would have then known that the defendant's conduct violated the Constitution or federal statute as alleged by plaintiff.[13] In this determination of objective reasonableness, the defendant's subjective state of mind is irrelevant.[14] Furthermore, even officials who reasonably, but mistakenly, commit a constitutional violation are entitled to immunity.[15]

An analysis of the qualified immunity defense requires a two-step approach. The threshold question is "whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right."[16] If the allegations could make out a constitutional violation, the second question is whether it would have been "clear to a reasonable officer that his conduct was unlawful in the situation confronted."[17] It follows that officials are entitled to the defense of qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[18]

The Supreme Court explained in *Saucier v. Katz* that courts must consider the

---

[13] *Thompson*, 245 F.3d at 457.

[14] *Id.*

[15] *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir.2001).

[16] *Keenan v. Tejeda*, 290 F.3d 252, 261 (5th Cir.2002) (quoting *Price v. Roark*, 256 F.3d 364, 369 (5th Cir.2001)).

[17] *Keenan*, 290 F.3d at 261 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

[18] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted).

requirements of qualified immunity in the proper sequence.[19] Accordingly, a court must determine at the outset whether the factual allegations, viewed in the light most favorable to the plaintiff, reveal a constitutional violation.[20] If the court concludes after such an analysis that no constitutional transgression occurred, then there is no need for it to proceed to the next step in the qualified immunity analysis.[21]

B. Federal Claims

1. False Arrest and False Imprisonment

Plaintiff avers that Defendants Kerr County, Twiss, and Coleman acted under color of state law to deprive Shields of his Fourth Amendment right to be free from unreasonable arrests and detentions. It has long been held in this circuit that once "facts supporting an arrest are placed before an independent intermediary such as a . . . grand jury, the intermediary's decision breaks the chain of causation" for constitutional violations such as false arrest and false imprisonment.[22] However, the Fourth Amendment claims against a defendant may be maintained where the plaintiff makes an affirmative showing that "the deliberations of that intermediary were in some way tainted by the actions of the

---

[19] *Saucier*, 533 U.S. at 200.

[20] *Id* at 201.

[21] *Id.*

[22] *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir.1994) (citing, *inter alia*, *Wheeler v. Cosden Oil and Chemical Co.*, 744 F.2d 1131, 1132 (5th Cir.1984)).

defendants."[23] For example, the failure to present all of the facts, both inculpatory and exculpatory, to the grand jury; or the presentation of false or fabricated evidence, expose the defendant to liability for false imprisonment or arrest.[24]

In the present case, Coleman submitted the case against Shields to a duly constituted Kerr County grand jury for consideration. (*See* Def. Coleman's Mot. Summ. J., Coleman Aff., Ex. 1 at 6.) After Coleman's presentation of the case, the grand jury issued a three-count indictment against Shields for sexual assault of a child. (*See id*. Ex. 8.) Consequently, a writ of capias issued to the state law enforcement officials commanding them to take Shields into custody. (*See id*. Ex. 8.)

Applying the reasoning of *Taylor*, the grand jury's finding of probable cause to indict Shields would insulate Twiss and Coleman from the false-arrest and false-imprisonment

---

[23] *Taylor*, 36 F.3d at 457 (quoting *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir.1988)).

[24] *Hand*, 838 F.2d at 1428 (noting that "[a]ny misdirection of the . . . grand jury by omission or commission perpetuates the taint of the original official behavior."). The reasoning of *Hand*, although still authoritative, has been muddied by recent events in the instant case. Following this Court's quashing of Plaintiff's subpoenas to depose the grand jurors, Plaintiff's counsel filed a petition in the 198th Judicial District Court of Kerr County to request disclosure of the grand jury proceedings. Specifically, Plaintiff's counsel sought to determine whether Coleman and Twiss presented all of the exculpatory material to the grand jury. The District Court denied the petition; the Fourth Court of Appeals Texas affirmed, holding that "prosecutors have no duty to present exculpatory evidence to the grand jury." *In re Grand Jury Proceedings*, No. 04-02-00402-CV (Tex.App.– San Antonio June 18, 2003), *available at* http://www.4thcoa.courts.state.tx.us/opinions/HTMLOpinion.asp?OpinionID=16170. Whether Defendants had the duty to divulge exculpatory evidence to the grand jury is now unclear. If not, then *In re Grand Jury Proceedings* would seem to bar Plaintiff's ability to bring her false-arrest, false-imprisonment, and malicious-prosecution claims. The absence of a duty to present exculpatory material to the grand jury can hardly give rise to a constitutional violation for failure to do so. But the Court merely wishes to point out the tension between *Hand* and *In re Grand Jury Proceedings*, at least insofar as *Hand* purports to furnish causes of action for false imprisonment and false arrest based on the withholding of exculpatory evidence from the grand jury. The Court recognizes the continued validity of *Hand* and applies its precepts to the current set of facts.

claims, despite the possibility of a malicious motive. Plaintiff argues that notwithstanding the indictment, Twiss and Coleman engaged in foul play in that "the summary judgment evidence is completely devoid of any proof of reasonable suspicion, much less probable cause, that Harold Shields committed any crime." (Pl.'s Resp. at 23). Thus, Plaintiff urges the Court to infer that had the grand jury been presented with all of the conflicting evidence, it would not have indicted Shields.

Twiss stated at her deposition that she presented to the grand jury the information contained in her case file. (*See* Def. Twiss's Mot. Summ. J., Twiss Dep., Ex. A at 176.) Twiss affirmed that she tendered both inculpatory and exculpatory facts, both "the good and the bad." (*Id.* at 177.) Coleman also explained during her deposition that Twiss "gave [the grand jury] the history of the investigation [– ] . . . the things . . . that matched up [and] the things . . . that didn't match up." (Def. Coleman's Mot. Summ. J., Coleman Dep., Ex. 2 at 120.) Through competent summary judgment evidence, Defendants have negated the fact issue of whether the actions of Twiss and Coleman compromised the grand jury deliberations. Accordingly, the burden shifts to Plaintiff who must counter with sufficient evidence showing a genuine issue of material fact.[25]

Plaintiff's attempt to present a viable fact issue consists of conclusory allegations unsupported by evidence. For instance, Plaintiff claims in her response that "[i]t is believed and therefore hereby asserted that Deputy Twiss failed to present known exculpatory

---

[25] *See Celotex*, 477 U.S. at 324.

evidence, although she had a duty to do so, and that she then testified falsely in her deposition in this case to cover it up." (Pl.'s Resp. at 6.) Plaintiff continues, arguing that "no reasonable Grand Juror could have returned a true bill of indictment against Harold Shields if everything known to law enforcement about [him], and about the suspect known as Mr. M, had been fully disclosed." (*Id.* at 6-7.)

These assertions, offered in Plaintiff's Response for the mere sake of argument, fail to create fact issues warranting the denial of summary judgment.[26] In the absence of concrete evidence showing otherwise, the Court cannot disregard the testimony of both Coleman and Twiss or deem their testimonies unworthy of credence.[27] Thus, Plaintiff's unsubstantiated conclusions – that Twiss and Coleman withheld information from the grand jury which contaminated its deliberation and lead it to indict Shields – are insufficient to withstand summary judgment.

In sum, the Court finds that the grand jury's rendering of an indictment against Shields served to break the chain of causation, shielding Twiss and Coleman from liability for false arrest and false imprisonment. In addition, the Court also grants summary judgment on the

---

[26] *See, e.g., Marshall on Behalf of Marshall v. East Carroll Parish Hosp. Service Dist.*, 134 F.3d 319, 324 (5th Cir.1998) (citing *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir.1997) ("Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment."); *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir.1995) ("conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment"); *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5th Cir.1993) (internal quotation marks and citation omitted) (summary judgment is appropriate if "nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.")).

[27] *Reeves*, 530 U.S. at 150.

false arrest and imprisonment claims against Kerr County, as Plaintiff has presented no evidence tending to suggest that the county maintained a policy of withholding exculpatory evidence from grand juries.

### 2. Malicious Prosecution

Plaintiff further claims that Twiss and Coleman, by their involvement in the events leading up to Shields' indictment, arrest, and incarceration, maliciously prosecuted him in violation of the Fourth Amendment. In this circuit, district courts look to the "elements of the tort of malicious prosecution as defined under the law of the relevant state to determine whether a plaintiff has established a claim of malicious prosecution."[28] Under Texas law, the elements for a claim of malicious prosecution are: (1) a criminal action commenced against the plaintiff; (2) the prosecution was caused by the defendants or with their aid; (3) the action terminated in plaintiff's favor; (4) the plaintiff was innocent; (5) the defendants acted without probable cause; (6) the defendants acted with malice; and (7) the criminal proceeding damaged the plaintiff.[29]

Here, the Court finds that Plaintiff has failed to present a fact issue with respect to at least two of the required elements for a cause of action for malicious prosecution. First, the Court has already determined that there is an insufficiency of evidence to support Plaintiff's contention that Twiss undermined the grand jury's deliberations by omitting important

---

[28] *Castellano v. Fragozo*, 311 F.3d 689, 699 (5th Cir.2002), *reh'g en banc granted by* 321 F.3d 1203 (5th Cir.2003) (citation omitted).

[29] *Id.* at 699-700.

exculpatory information.[30] In the absence of wrongdoing on the part of Twiss or Coleman, it follows that the grand jury's determination – that there was probable cause to arrest Shields – defeats any fact issue regarding that element of a malicious-prosecution claim.

Second, and more importantly, Plaintiff does not allege that Twiss or Coleman acted with malice, a necessary element of a claim for malicious prosecution. Instead, Plaintiff charges that the *deficient investigation* of Twiss and Coleman led them to improperly accuse him. In order to evidence malice, Plaintiff would need to show that "the proceedings [were] initiated primarily for a purpose other than that of bringing an offender to justice."[31] Plaintiff describes Twiss as "inexperienced, ill-trained and overworked." (Pl.'s Resp. at 2.) Plaintiff also alleges that the "team of investigators did a terrible job." (*Id.* at 3.) Significantly, Plaintiff admits that Shields was prosecuted not out of the ill will of Twiss or Coleman, but rather, that if "Twiss had [had] the time and ability to properly investigate the allegations against Mr. Shields, the facts would have been investigated and Mr. Shields' Constitutional rights would not have been violated." (*Id.* at 14.) Thus, by Plaintiff's own argument, Twiss and Coleman proceeded to seek the prosecution of Shields because they believed, however erroneously, that he was a possible perpetrator of the child. For this reason, there are no issues of fact surrounding the core "malice" element, and summary judgment is the proper

---

[30] Again, the Court notes that the significance of Plaintiff's allegations that Defendants withheld exculpatory evidence from the grand jury has been called into serious doubt by the Fourth Court of Appeals' holding in *In re Grand Jury Proceedings*. See *supra* note 24.

[31] *Campbell v. City of San Antonio*, 43 F.3d 973, 981 (5th Cir.1995) (quoting RESTATEMENT (SECOND) OF TORTS § 668 (1977)).

course.

### 3. Failure to Conduct a Reasonable Investigation

Plaintiff claims that Twiss and Coleman conducted a constitutionally unreasonable investigation leading to his illegal prosecution, arrest, and detainment. The Court finds it difficult to divine a constitutional deprivation based on the purported inadequate investigation conducted by Defendants Twiss and Coleman. Moreover, the Court is unaware of, nor has Plaintiff pointed out, a legal basis for such a § 1983 action. Therefore, the Court grants summary judgment on this claim as alleged against Twiss and Coleman.

### 4. Failure to Supervise/Train Claims

Plaintiff further alleges that Kerr County failed to properly supervise Defendant Twiss, in that the county so overwhelmed Twiss with work that she could not adequately investigate her cases, bringing about the injury to Shields. Plaintiff also avers that Kerr County failed to properly train Defendant Twiss in the creation and presentation of photographic lineups, resulting in an unconstitutionally suggestive lineup that falsely implicated Shields.

A municipality cannot be held liable under § 1983 on a theory of respondeat superior.[32] In order to hold a public entity liable under § 1983 for the misconduct of one of its employees, a plaintiff must show that an official policy or custom "was a cause in fact of

---

[32] *Kentucky v. Graham*, 473 U.S. 159, 168 (1985); *Monell v. Department of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978).

the deprivation of rights inflicted."[33] "To satisfy the cause in fact requirement, a plaintiff must allege that 'the custom or policy served as the *moving force* behind the [constitutional] violation' at issue, or that [his] injuries resulted from the execution of the official policy or custom."[34] An official policy or custom includes "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."[35] Finally, the Plaintiff must point to evidence demonstrating that the policy or custom of the municipality was adopted or continued by its policymakers in "deliberate indifference to the constitutional rights of its inhabitants."[36]

Upon consideration of the above standard, Plaintiff's claims against Kerr County clearly fail. Plaintiff maintains that "Kerr County failed to train and/or supervise Defendant Twiss properly in the creation and/or presentation of photographic lineups." (Pl.'s Resp. at 12.) The testimony of Twiss, attached in support of this contention, reveals possible infirmities in the preparation of the photographic lineup. The crux of Plaintiff's claim against Kerr County is that it failed to intervene and prevent this one possibly impermissible

---

[33] *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir.1997) (quoting *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir.1994)).

[34] *Spiller*, 130 F.3d at 167 (citations omitted) (emphasis added); *see also Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

[35] *Campbell v. City of San Antonio*, 43 F.3d 973, (5th Cir.1995) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984)).

[36] *City of Canton v. Harris*, 489 U.S. 378, 392 (1989).

identification.³⁷ But the evidence is devoid of any mention of a countywide policy or training program that encouraged city officials to employ unconstitutionally evocative photographic lineups. Moreover, Plaintiff has fallen short of alleging facts tending to show that the relevant policies promulgated by Kerr County evinced deliberate indifference to the constitutional rights of its residents.³⁸

Plaintiff further maintains that Kerr County's policy of overworking its investigators coupled with its inadequate supervision "virtually guaranteed that the investigation of . . . Shields would be inadequate and violate his civil rights." (Pl.'s Resp. at 5.) The Court understands Plaintiff's contention to be that Kerr County failed to provide its employees a manageable caseload, and that this "policy" was a substantial motivating factor in the occurrence of the Fourth Amendment violations alleged here.

The Court has already determined that Plaintiff failed to create fact issues regarding the Fourth Amendment claims against Twiss and Coleman in their individual capacities. It follows that the Court cannot conclude that a Kerr County policy contributed to the constitutional infractions. Additionally, outside of this one improper prosecution, Plaintiff

---

³⁷ *See Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir.1984) (noting that "[i]solated violations are not the persistent, often repeated constant violations that constitute custom and policy" (citations omitted)).

³⁸ Although Plaintiff's Second Amended Complaint faults only Kerr County for its failure to adequately train its officers in the correct preparation of photographic lineups, her Response suggests that all of Defendants are being charged with this potential constitutional violation. (*See* Pl.'s Resp. at 24.) However, Plaintiff provides no legal support for the contention that the use of an improper photographic lineup can constitute a distinct constitutional violation giving rise to money damages under § 1983. The case cited by Plaintiff, *United States v. Merkt*, 794 F.2d 950, 058 (5th Cir. 1988), concerns the *admissibility* of a suggestive pretrial photographic identification, not the *liability* of an individual under § 1983.

has not shown that Kerr County's policy of overworking its employees, even if established, sparked multiple infractions of constitutional rights routinely ignored by the city.

On a final note, even assuming that Plaintiff sufficiently alleged the existence of the various constitutional violations, her claims would still fail under the second prong of the *Saucier* test for determining qualified immunity.[39] Under *Saucier*, once a plaintiff has overcome the initial hurdle of establishing a constitutional transgression, she must then show that the official's actions violated clearly established law.[40] In this regard, Plaintiff would need to show that *no* reasonable officer in the shoes of Twiss or Coleman would have believed that probable cause existed to indict Shields.[41] Even setting aside the grand jury's finding of probable cause to indict Shields, the Court cannot conclude on these facts that no other officer would have made same choices as Twiss and Coleman.

### C. State Claims

The Court's finding that the facts, viewed in the light most favorable to Plaintiff, fail to establish the existence of constitutional violations, also mandates dismissal of the state claims. Further, under Texas law, as long as an officer was acting in good faith, she is entitled to official immunity from suit. The standard for "good faith" mimics the federal paradigm of qualified immunity, and requires a defendant to show that "a reasonable and

---

[39] *Saucier*, 533 U.S. at 201-202.

[40] *Id.*

[41] *Keenan*, 290 F.3d at 262 ( "If probable cause existed, however, or if reasonable police officers could believe probable cause existed, they are exonerated").

prudent police officer could have believed his conduct was lawful in light of clearly established law and the information possessed by him at the time" of the law enforcement action.[42] Similarly, to refute a defendant's showing of good faith, a plaintiff must demonstrate that "no reasonable police officer in the [official's] position could have thought the facts were such that they justified" the conduct of the official.[43] As explained above, in addition to her inability to establish viable constitutional infractions, Plaintiff has failed to rebut the presumption under Texas official-immunity jurisprudence that Twiss and Coleman acted in good faith while pursuing their case against Shields. Accordingly, the Court will grant summary judgment with respect to the state claims against each of Defendants.

## III. Conclusion

The Court laments that Shields was forced to undergo such a shocking accusation as he enjoyed his retirement in a peaceful Texas hill-country town. Certainly, the Court sympathizes with his plight and cannot begin to imagine the horror of being improperly embroiled in a sickening child sexual abuse scandal. That said, allegations of constitutional violations on the part of city officials are also a very serious matter, requiring evidence of fairly egregious behavior by an official before liability may attach.

In this case, Plaintiff failed to show that Defendants acted with the requisite degree of malice to support a claim for malicious prosecution. Moreover, Plaintiff failed to provide concrete support for her argument that Defendants misled the grand jury by withholding

---

[42] *Texas Dept. of Public Safety v. Perez*, 905 S.W.2d 695, 699 (Tex.App–Houston [14th Dist.] 1995).

[43] *Id.* at 700.

important exculpatory material, defeating her false-imprisonment and false-arrest claims. Finally, although it may be true that Kerr County overworks its staff and provides insufficient training in identification techniques, Plaintiff has neither sufficiently substantiated these accusations as "policies" nor has she shown a pattern of similar occurrences amounting to deliberate indifference. Accordingly, the Court GRANTS Defendants' motions for summary judgment and dismisses all of Plaintiff's claims.

Signed on this 9th day of July, 2003.

ROYAL FURGESON
United States District Judge
Western District of Texas